UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GLADSTONE TAYLOR,                                   :
                          Plaintiff,                :
v.                                                  :
                                                    :
MICROGENICS CORPORATION; THERMO                     :
FISHER SCIENTIFIC; CORRECTION                       :
OFFICER PAMELA BERRY, in her individual             :
capacity; CORRECTION OFFICER FRANCIS                :
SIOCO, in his individual capacity; DAMON            :
GLOVER, Community Correctional Center               :
Assistant, in his individual capacity;              :
CORRECTION OFFICER AARON                            :
HERNANDEZ, in his individual capacity;              :          **OPINION AND ORDER**
CORRECTION OFFICER NICOLE HILTON,                   :
in her individual capacity; ANNA ICARRI,            :          21 CV 6452 (VB)
Offender Rehabilitation Coordinator; in her         :
individual capacity; EDUCATION                      :
SUPERVISOR RENEE MULLIGAN, in her                   :
individual capacity; ANA RUBIO, Offender            :
Rehabilitation Coordinator; in her individual       :
capacity; CORRECTION OFFICER YUAN                   :
WU, in his individual capacity; and                 :
CORRECTION OFFICERS DOE ONE-TEN,                    :
representing as yet unknown and unidentified         :
members of the Fishkill Correctional Facility,      :
                          Defendants.               :
                                                    :
-------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Gladstone Taylor brings this action against defendants Microgenics Corporation

("Microgenics"), Thermo Fisher Scientific ("Thermo Fisher," and together with Microgenics, the

"Microgenics Defendants"), and the following New York State employees working at Fishkill

Correctional Facility ("Fishkill"), in their individual capacities:  Correction Officer Pamela Berry

("Officer Berry"), Correction Officer Francis Sioco ("Officer Sioco"), Community Correctional

Center Assistant Damon Glover ("CCCA Glover"), Correction Officer Aaron Hernandez

("Officer Hernandez"), Correction Officer Nicole Hilton ("Officer Hilton"), Offender

Rehabilitation Coordinator Anna Icarri ("ORC Icarri"), Education Supervisor Renee Mulligan

("Supervisor Mulligan"), Offender Rehabilitation Coordinator Ana Rubio ("ORC Rubio"),

Correction Officer Yuan Wu ("Officer Wu"), and up to ten unidentified corrections officers

(collectively, the "State Defendants").[1]  Plaintiff alleges that, while he was participating in a

work release program at Fishkill, a false positive result on a faulty drug test produced by the

Microgenics Defendants caused the State Defendants to remove him from the program, deny him

certain privileges, place him back in the general prison population, and incarcerate him beyond

his conditional release date in violation of the Eighth Amendment, the Fourteenth Amendment,

and state law.

Now pending are (i) the Microgenics Defendants' motion to dismiss the amended

complaint[2] under Rule 12(b)(6) (Doc. #58), and (ii) the State Defendants' motion to dismiss the

amended complaint under Rule 12(b)(6) and, with respect to plaintiff's request for injunctive

relief, under Rule 12(b)(1).  (Doc. #82).

For the following reasons, the Microgenics Defendants' motion is GRANTED IN PART

and DENIED IN PART and the State Defendants' motion is GRANTED IN PART and DENIED

IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

---

[1]    The Court dismissed plaintiff's claims against Correction Officer Brandon on May 19,
2022, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  (Doc. #76).

[2]    Thermo Fisher is the corporate parent company of Microgenics, and filed a Notice of
Joinder in Microgenics's motion to dismiss.  (Doc. #59).

**BACKGROUND**

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.   Microgenics Defendants

The Microgenics Defendants manufacture and sell drug-testing immunoassay machines called Indiko Plus urinalysis analyzers ("IPUAs").  In June 2018, the Microgenics Defendants contracted with the New York State Department of Corrections and Community Supervision ("DOCCS") to provide IPUAs to test incarcerated individuals suspected of illicit drug use.  As part of this contract, the Microgenics Defendants were obligated to provide maintenance and support to DOCCS, including telephone support, "preventative maintenance visits," and repair, replacement, and maintenance of machines.  (Doc. #39 ("Am. Compl.") ¶ 46).  In addition, Microgenics representatives allegedly trained and, in some cases, supervised DOCCS personnel using IPUAs, as well as provided guidance and input on drafting and implementing the DOCCS testing directive to be used in disciplining prisoners.[3]

According to the amended complaint, the contract provided that Microgenics representatives would testify at disciplinary hearings for incarcerated individuals who tested

---

[3]      In connection with their motion, the Microgenics Defendants submit DOCCS Directive 9432, Substance Abuse Testing by Community Supervision Staff, dated June 4, 2019 (Doc. #58-9 (the "DOCCS Directive")), and a memorandum from defendant Anthony Annucci, Acting Commissioner of DOCCS, to "All Superintendents," dated November 8, 2019, setting forth a change in the DOCCS Directive (Doc. #58-8 (the "Amended DOCCS Directive")).  Plaintiff relies on the content of the DOCCS Directive in his factual allegations in the amended complaint.  (See, e.g., Am. Compl. ¶¶ 80, 160).  Accordingly, the Court will consider the DOCCS Directive and the Amended DOCCS Directive as integral to the amended complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

positive regarding "the professed reliability of their testing," and Microgenics representatives did so at several disciplinary hearings in 2019.  (Am. Compl. ¶ 48).

Plaintiff contends the Microgenics Defendants' own internal "manufacturer standards" require confirmatory testing, via gas chromatography or some other method, to verify "any positive drug test results obtained through IPUA urinalysis."  (Am. Compl. ¶¶ 29–30).  However, the Microgenics Defendants allegedly did not disclose these manufacturer standards to DOCCS when negotiating its contract or when training DOCCS employees who would administer IPUA tests.

At some point, the Microgenics Defendants "became aware that the IPUA had a cross-reactivity issue, meaning that the system falsely reported innocent substances in urine as illicit substances."  (Am. Compl. ¶ 51).  However, plaintiff alleges the Microgenics Defendants did not train DOCCS personnel to understand how IPUA tests identified a positive result, such that "hearing officers routinely misunderstood how" they worked and "medical staff were not appropriately consulted during disciplinary hearings to identify cross-reactivity issues."  (Id. ¶ 89).

DOCCS also allegedly became aware of these cross-reactivity issues, and on November 8, 2019, DOCCS revised the DOCCS Directive on urinalysis testing to provide:

> All urine samples that test positive following application of our current Thermo Fisher immunoassay tests must be sent for confirmatory testing by an outside, independent vendor and no incarcerated individual may be disciplined, nor any other adverse action taken against such individual, for a positive drug test before a positive confirmatory test has been received and the disciplinary hearing concluded.

(Amended DOCCS Directive, at ECF 2).[4]  Moreover, DOCCS allegedly reversed every inmate disciplinary decision during 2019 based on positive IPUA tests for buprenorphine, synthetic cannabinoid, opiate, and THC, and on January 15, 2020, DOCCS terminated its contract with the Microgenics Defendants.

On February 28, 2020, DOCCS sued the Microgenics Defendants in Supreme Court, Albany County, claiming the Microgenics Defendants' equipment, products, procedures, and services were deficient and produced false positive results.

## II.   State Defendants

Plaintiff was incarcerated at Fishkill from June 26, 2019, through March 26, 2020.

According to the amended complaint, beginning June 26, 2019, plaintiff participated in a work release program.  Under the program, plaintiff lived at home with his family five days and four nights per week.  During the rest of the week, he returned to be incarcerated at Fishkill.  As a member of the program, he was housed with twenty-one non-felony offenders who also participated in work release, he was not confined to a narrow cell or cube, and he had better access to a stove, showers, and toilets than inmates residing in Fishkill's general population area. Plaintiff alleges the individuals he was housed with were respectful and did not fight with other inmates or corrections officers, because participation in work release was based on good behavior.

In connection with the work release program, plaintiff worked at a Wendy's restaurant in Elmsford, New York, four days per week.  Plaintiff alleges he was being considered for promotion to management around the relevant time.

---

[4]      "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Plaintiff further alleges individuals participating in work release must submit to drug testing.  Accordingly, on January 9, 2020, plaintiff was allegedly given an IPUA drug test by Officer Wu.  Plaintiff contends he went to work at Wendy's the following day, January 10, but on January 11, a Fishkill employee informed him he could not leave Fishkill to return to his home.  Plaintiff alleges he was not initially told why he was "on hold" from his typical participation in work release.  (Am. Compl. ¶ 112).  However, on January 12, 2020, a correction officer allegedly informed plaintiff he was removed from the work release program and would be imprisoned full-time because his drug test was positive for opiates.

Plaintiff alleges the positive result was in error.  Over the next several days, he alleges he repeatedly asked Fishkill employees to retest his urine sample, but a correction officer informed him it had been thrown out.

On an unspecified date, Officer Hernandez allegedly escorted plaintiff to his locker where he retrieved his naproxen[5] medicine bottle.  Plaintiff claims he uses naproxen for pain and swelling, and it does not contain any opiates.

On January 13, 2020, plaintiff allegedly told CCCA Glover, in the presence of ORC Rubio, he had not used any illegal drugs.  However, the same day, CCCA Glover prepared an inmate misbehavior report falsely stating plaintiff tested positive for opiates and that plaintiff told CCCA Glover the positive result was caused by opiates in naproxen.  Plaintiff alleges CCCA Glover prepared this report notwithstanding that medical staff informed CCCA Glover naproxen does not contain opiates.  In addition, plaintiff alleges the report should have been prepared by Officer Wu, as the officer who administered the IPUA test.

---

[5]      Plaintiff alleges the brand name of naproxen is Aleve.

6

Consequently, plaintiff was allegedly denied commissary and visitation privileges, and on January 22, 2020, he was removed from the work release housing section.  Plaintiff alleges he was transferred to Fishkill's general population area, where he was placed in "cube confinement" with approximately sixty other men and could not move from his assigned "cube area" without permission from a correction officer.  (Am. Compl. ¶ 120).  In the general population area, plaintiff was allegedly forced to interact with violent felony offenders in a large, crowded, open dormitory style room and often felt unsafe.  Plaintiff alleges the transfer exacerbated his depression, anxiety, and schizophrenia and he experienced migraines, difficulty sleeping, extreme paranoia, hopelessness, and a lack of motivation.

On an unspecified date, Wendy's terminated plaintiff's employment because he was no longer permitted to leave Fishkill.

On January 29, 2020, DOCCS conducted a disciplinary hearing on plaintiff's alleged violation of work release rules and drug use policies.  The hearing was led by defendant Supervisor Mulligan and attended by defendants ORC Icarri, Officer Hernandez, ORC Rubio, and CCCA Glover.

During the hearing, CCCA Glover allegedly told plaintiff he would never go home unless he pleaded guilty.  CCCA Glover also allegedly refused plaintiff's request to retake the urine test.  Supervisor Mulligan also allegedly pressured plaintiff to plead guilty, telling plaintiff he would be denied privileges if he contested the misbehavior report and that the odds of winning on appeal were slim to none.  However, plaintiff pleaded not guilty and requested a retest of his urine; this request was allegedly denied.

Supervisor Mulligan found plaintiff guilty of being under the influence of a controlled substance and of violating the work release program rules and regulations.  She allegedly

declined to place plaintiff in segregated housing due to his good behavior while incarcerated, but continued to house him in the general population and deny commissary and visitation privileges.

Hours after the disciplinary hearing, plaintiff appealed his disposition to the DOCCS Commissioner. In addition, on February 26, 2020, plaintiff appealed the disposition to the Director of the Temporary Release Program, alleging Fishkill failed to provide him with adequate due process prior to his removal from the work release program.

Plaintiff alleges he continued to request another test of his blood or urine, but these requests were denied by Fishkill employees including Officer Berry, Officer Sioco, and Officer Hilton.

At the time of plaintiff's removal from the work release program, his scheduled conditional release date was March 12, 2020. However, he alleges his "good time" credit was revoked as a result of his disciplinary proceedings, and he was not released until March 26, 2020. (Am. Compl. ¶ 141).

## DISCUSSION

I.   Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[6] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded

---

[6]   Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In deciding a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The Court may also consider any documents "integral to the complaint" when their import and authenticity are not disputed. Id. A document is considered "integral to the complaint" when "the complaint relies heavily upon its terms and effect." Id.

II.   Claims Against the Microgenics Defendants

Plaintiff asserts claims against the Microgenics Defendants for constitutional violations pursuant to Section 1983, deceptive business practices under New York General Business Law Section 349 ("Section 349"), and negligence.

As an initial matter, the Microgenics Defendants urge the Court to consider discovery responses produced in DOCCS's lawsuit against the Microgenics Defendants in state court. (Doc. #58-11). The Microgenics Defendants contend these discovery responses show that, by the time plaintiff's drug test was performed in January 2020, "DOCCS had stopped using the

Microgenics' drug testing system altogether and moved to initial and confirmatory testing by a third party Alere." (Doc. #58-1 at 1). Thus, the Microgenics Defendants argue they could not have caused plaintiff's alleged injuries because plaintiff was not subjected to a Microgenics drug test.

However, these discovery responses are extraneous to and not incorporated by reference in the amended complaint, nor had they been provided to plaintiff before plaintiff filed the amended complaint. (See Doc. #58-12 at ECF 2). "[A] court may not resolve [a Rule 12(b)(6) motion] by weighing the plausibility of competing allegations or by considering evidence extrinsic to the non-movant's pleading without converting the motion to one for summary judgment." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 306 (2d Cir. 2021). Because plaintiff cannot have relied on these responses when drafting the complaint, the Court cannot consider them to resolve the instant motion.

That said, if appropriate, the Court can consider these documents upon a motion for summary judgment by the Microgenics Defendants.

A.    Section 1983 Claims

The Microgenics Defendants argue plaintiff's Section 1983 claims against them fail because plaintiff does not plausibly allege the Microgenics Defendants engaged in state action.

The Court agrees the Section 1983 claims against the Microgenics Defendants must be dismissed, but because plaintiff has failed to plead the Microgenics Defendants were personally involved in his alleged constitutional injuries.

1.    Applicable Law

To state a claim under Section 1983, a plaintiff must allege facts showing a defendant's direct and personal involvement in the alleged constitutional deprivation. See Tangreti v.

10

Bachmann, 983 F.3d 609, 616 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676

(2009)).  Therefore, to state a Section 1983 claim against private actors, a plaintiff must allege

the "personal involvement of defendants in alleged constitutional deprivations" and that "the

defendant is a person acting under the color of state law."  See Back v. Hastings on Hudson

Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004).

      2.    Application

Plaintiff alleges the disciplinary measures imposed upon him due to the false positive test

amounted to cruel and unusual punishment in violation of the Eighth Amendment and violated

his substantive due process rights under the Fourteenth Amendment.  According to plaintiff, the

Microgenics Defendants participated in these constitutional violations by "facilitating and

enabling, and even actively and substantially encouraging, the imposition and infliction of the

disciplinary sanctions and various other deprivations and adverse actions against Plaintiff on the

basis of the faulty" drug test.  (Am. Compl. ¶¶ 187, 190, 201).

However, by the time plaintiff's drug test was administered in January 2020, DOCCS

officials had revised the DOCCS Directive such that "no incarcerated individual [could] be

disciplined, nor any other adverse action taken against such individual, for a positive drug test

before a positive confirmatory test has been received and the disciplinary hearing concluded."

(Amended DOCCS Directive at ECF 2).  Even before these revisions, the DOCCS Directive—

which the Microgenics Defendants allegedly helped create—does not make any

recommendations as to inmate discipline based upon a positive test.  Moreover, according to

plaintiff, Microgenics representatives only testified at disciplinary hearings as to IPUA reliability

"as late as December 2019," and thus could not have testified at plaintiff's January 29, 2020,

hearing.  (Doc. #77 at 13; Am. Compl. ¶ 48).  Therefore, assuming plaintiff's allegations are

true, by the time plaintiff's test was administered and his hearing was conducted, DOCCS was

no longer relying on the Microgenics Defendants' representations or training as to the reliability

of IPUA tests.

Therefore, plaintiff's allegations do not support a reasonable inference that the

Microgenics Defendants directly participated in imposing the allegedly unconstitutional

discipline.  See Moreland v. Micorgenics Corp., 2022 WL 2657287, at *6 (E.D.N.Y. June 1,

2022) (dismissing Section 1983 claims under the Eighth and Fourteenth Amendments brought by

incarcerated persons against the Microgenics Defendants for failure to plead personal

involvement).

Accordingly, plaintiff's Section 1983 claims against the Microgenics Defendants must be

dismissed.

B.     Section 349 Claim

The Microgenics Defendants argue plaintiff cannot state a Section 349 claim against

them because the contract between DOCCS and the Microgenics Defendants was not consumer-

oriented and because plaintiff did not personally rely on their allegedly misleading statements.

The Court agrees the claim should be dismissed, but because any injury to plaintiff

caused by the Microgenics Defendants' allegedly deceptive statements is derivative of injuries

suffered by DOCCS.

1.     Applicable Law

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade

or commerce."  N.Y. Gen. Bus. L. § 349.  "To successfully assert a [Section 349] claim, a

plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is

(2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly

12

deceptive act or practice." City of New York v. Smoke-Spirits.Com, Inc., 12 N.Y.3d 616, 621 (2009). Section 349 "is limited in its application to those acts or practices which undermine a consumer's ability to evaluate his or her market options and to make a free and intelligent choice." N. State Autobahn, Inc. v. Progressive Ins. Grp. Co., 102 A.D.3d 5, 13 (2d Dep't 2012).

Although standing to bring Section 349 claims is not limited "to only consumers," a plaintiff must plead a direct injury—not an indirect or derivative injury—resulting from the allegedly misleading conduct. Id. at 15–16. "An injury is indirect or derivative when the loss arises solely as a result of the injuries sustained by another party." City of New York v. Smoke-Spirits.Com, Inc., 12 N.Y.3d at 622 (dismissing Section 349 claim brought by city because lost tax revenue caused by defendants' illegal sale of cigarettes was derivative to injuries suffered by "misled consumers who purchased defendants' cigarettes"); see Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc., 3 N.Y.3d 200, 207 (2004) (dismissing Section 349 claim because "the losses [plaintiff] experienced arose wholly as a result of" injuries suffered by others). For this reason, the New York Court of Appeals has "reject[ed a plaintiff's] assertion that it may state a cognizable section 349(h) . . . claim simply by alleging consumer injury or harm to the public interest." City of New York v. Smoke-Spirits.Com, Inc., 12 N.Y.3d at 623.

      2.    Application

Here, plaintiff alleges the Microgenics Defendants made misrepresentations to DOCCS about the reliability of IPUA tests, DOCCS relied on these misrepresentations in deciding to enter into a contract with the Microgenics Defendants and use IPUA tests on incarcerated persons, and DOCCS's reliance on these misrepresentations caused DOCCS employees to discipline plaintiff (and others) based on an false positive test. Thus, plaintiff's alleged injury is derivative, because "had the allegedly deceived consumer[]"—here, DOCCS—"not been

13

improperly induced to" contract with the Microgenics Defendants, then plaintiff "would have no claim" based on defective test results.  City of New York v. Smokes-Spirits.Com, 12 N.Y.3d at 622; see also Moreland v. Microgenics Corp., 2022 WL 2657287, at *7 (E.D.N.Y. June 1, 2022) (dismissing incarcerated plaintiffs' Section 349 claim against the Microgenics Defendants as derivative, among other grounds).

Accordingly, plaintiff's Section 349 claim against the Microgenics Defendants must be dismissed.

C.      Negligence Claim

The Microgenics Defendants argue plaintiff's negligence claim must be dismissed because plaintiff has not alleged the Microgenics Defendants caused plaintiff's injury.

The Court disagrees.

1.      Applicable Law

Under New York law, to plead a negligence claim, a plaintiff must plausibly allege "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach."  Stagl v. Delta Airlines, Inc., 52 F.3d 463, 467 (2d Cir. 1995).

"Although the existence of a contractual relationship by itself generally is not a source of tort liability to third parties, [New York courts] have recognized that there are certain circumstances where a duty of care is assumed to certain individuals outside the contract." Landon v. Kroll Lab'y Specialists, Inc., 22 N.Y.3d 1, 6 (2013).  "[S]uch a duty may arise where the contracting party, in failing to exercise reasonable care in the performance of its duties, launches a force or instrument of harm."  Id.

The New York Court of Appeals has determined a drug testing laboratory owes a duty of care to perform a probationer's drug test in accordance with relevant professional standards, because "the release of a false positive report will have profound, potentially life-altering, consequences for a test subject" and the laboratory is "in the best position to prevent false positive results." Landon v. Kroll Lab'y Specialists, Inc., 22 N.Y.3d at 6. This duty of care, however, is limited to "a drug laboratory's failure to adhere to professionally accepted scientific testing standards in the testing of the biological sample" and does not extend to alleged failures to comply with regulatory requirements or guidelines. Pasternack v. Lab'y Corp. of Am. Holdings, 27 N.Y.3d 817, 826 (2016).

## 2.   Application

Plaintiff alleges the Microgenics Defendants breached their duty of care to adhere to professionally accepted standards by failing to inform DOCCS of, and testifying at inmate disciplinary hearings in disregard of, their manufacturer standards requiring a second, confirmatory test upon a positive urinalysis result. As a result, plaintiff alleges he was disciplined and incarcerated beyond his conditional release date. These allegations are sufficient to state a negligence claim against the Microgenics Defendants.[7]

Although the Microgenics Defendants contend they could not have breached a duty to plaintiff because the IPUA tests were packaged with informational literature stating test results

---

[7]   Other courts have determined the Microgenics Defendants owed incarcerated individuals a duty of care arising from IPUA tests that resulted in allegedly false positive results. See, e.g., Steele-Warrick v. Microgenics Corp., 2021 WL 1109052, at *9–14 (E.D.N.Y. Mar. 22, 2021); Wills v. Microgenics Corp., 2021 WL 1838275, at *1 (E.D.N.Y. May 7, 2021). But see Velez v. Microgenics Corp., 2021 WL 730232, at *3 (W.D.N.Y. Feb. 23, 2021) (dismissing pro se plaintiff's negligence claim against the Microgenics Defendants because "[e]ven if Defendants owed [plaintiff] a duty, [plaintiff's] conclusory and speculative allegations of negligence would not support his claims").

15

should be confirmed through a different test,[8] the Court cannot, at the motion to dismiss stage,

weigh the Microgenics Defendants' assertions against plaintiff's contrary allegations to

determine whether the Microgenics Defendants breached their duty to plaintiff.  See Guzman v.

Wackenhut Corp., 394 F. App'x 801, 803 (2d Cir. 2010) (summary order) ("It is for the fact-

finder to determine whether the duty was breached and, if so, whether the breach was the

proximate cause of plaintiff's injury.").

Accordingly, plaintiff's negligence claim against the Microgenics Defendants may

proceed.

III.   <u>Claims Against the State Defendants</u>

Plaintiff asserts Section 1983 claims against the State Defendants for alleged procedural

due process violations, substantive due process violations, Eighth Amendment violations, and

fabrication of evidence, as well as state law claims for false imprisonment.

A.   <u>Lack of Personal Involvement in Section 1983 Claims</u>

The State Defendants contend plaintiff's Section 1983 claims against them must be

dismissed because plaintiff has not alleged facts showing they were personally involved in the

alleged constitutional violations.

The Court agrees with respect to ORC Icarri, ORC Rubio, Officer Wu, and Officer

Hernandez, but disagrees with respect to Officer Hilton, Officer Berry, Officer Sioco, Supervisor

Mulligan, and CCCA Glover.

---

[8]     It appears these materials were provided to plaintiff before he filed the amended
complaint (See Doc. #58-12 at ECF 3-4), and because plaintiff's allegations rely heavily on what
the Microgenics Defendants said (or did not say) about the need for a confirmatory test, the
Court may consider these documents for purposes of the instant motion.

1.   <u>Applicable Law</u>

As explained above, to state a claim under Section 1983, a plaintiff must allege facts showing defendants' direct and personal involvement in the alleged constitutional deprivation. Therefore, to state a claim under Section 1983 against government officials, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." <u>Tangreti v. Bachmann</u>, 983 F.3d 609, 616 (2d Cir. 2020) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009)).

"As a corollary to the personal-involvement rule, complaints that rely on 'group pleading' and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim" under Section 1983. <u>Johnson v. City of New York</u>, 2017 WL 2312924, at *10 (S.D.N.Y. May 26, 2017). Accordingly, allegations that discuss several individual defendants "together without pleading facts demonstrating what each did that makes him liable" are impermissible to allege personal involvement. <u>Cooper v. City of New York</u>, 2019 WL 3642996, at *7 (E.D.N.Y. Aug. 5, 2019).

2.   <u>Application</u>

Other than conclusory group-pleading that refers to all State Defendants without differentiation (<u>see</u> Am. Compl. ¶¶ 142, 168, 177, 183), plaintiff does not allege ORC Icarri, ORC Rubio, Officer Wu, or Officer Hernandez directly participated in constitutional violations.

Plaintiff alleges ORC Icarri, ORC Rubio, and Officer Hernandez attended plaintiff's disciplinary hearing. (Am. Compl. ¶ 132). Plaintiff also alleges ORC Rubio was present when CCCA Glover asked plaintiff whether he used any illegal drugs. (Am. Compl. ¶ 117). However, alleging these defendants were present at plaintiff's disciplinary hearing or during questioning by another official, without more, does not rise to direct participation. <u>See</u> <u>Snead v. City of New</u>

York, 463 F. Supp. 3d 386, 399–400 (S.D.N.Y. 2020) ("An officer's mere presence at the scene of [the alleged constitutional violation] generally does not constitute sufficient personal involvement for § 1983 liability.") (collecting cases).

Plaintiff alleges Officer Wu gave him the initial drug test, and that Officer Wu should have written plaintiff's inmate misbehavior report (instead of CCCA Glover).  (Am. Compl. ¶¶ 111, 118).  However, plaintiff does not allege the initial test violated his rights, but rather that imposing discipline without conducting a confirmatory test did.  And plaintiff does not allege Officer Wu's failure to prepare the report violated his constitutional rights—he alleges the false report prepared by CCCA Glover played a role.

Finally, plaintiff alleges Officer Hernandez escorted him to his locker to retrieve his naproxen, which does not allege an injury to plaintiff, let alone a constitutional violation.

Accordingly, plaintiff's Section 1983 claims against ORC Icarri, ORC Rubio, Officer Wu, and Officer Hernandez must be dismissed.

B.    Procedural Due Process Claim

Defendants argue plaintiff's procedural due process claim against the State Defendants must be dismissed because plaintiff has not alleged the discipline imposed deprived him of a liberty interest and plaintiff received the minimal due process afforded to prisoners.

The Court agrees plaintiff's procedural due process claim against Officer Berry, Officer Sioco, and Officer Hilton must be dismissed because plaintiff fails to allege they afforded him insufficient process.  However, the Court disagrees with respect to plaintiff's claim against Supervisor Mulligan and CCCA Glover.

      1.   <u>Applicable Law</u>

To establish a violation of procedural due process under the Fourteenth Amendment, a plaintiff must show:  "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  <u>Giano v. Selsky</u>, 238 F.3d 223, 225 (2d Cir. 2001).

"Prisoners on work release have a liberty interest in continued participation in such programs."  <u>Friedl v. City of New York</u>, 210 F.3d 79, 84 (2d Cir. 2000).  "Thus, prisoners are entitled to procedural due process before they are" removed from work release programs.  <u>Id.</u>

However, even if an inmate's liberty interest is implicated by removal from a work release program, "[b]ecause prison disciplinary proceedings are not part of a criminal prosecution, the full panoply of rights due a defendant in such proceedings does not apply."  <u>Williams v. Menifee</u>, 331 F. App'x 59, 60 (2d Cir. 2009) (summary order) (quoting <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974)).  "In the work release revocation context, due process requires: (1) written notice of the claimed basis for revocation; (2) disclosure of evidence against the inmate; (3) an opportunity to be heard in person and to present evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral hearing body; and (6) a written statement by the factfinder detailing the reasons for revocation and identifying 'some evidence' in the record to support the findings."  <u>Dicks v. Chow</u>, 382 F. App'x 28, 30 (2d Cir. 2010) (summary order).

2.      Application

Here, plaintiff sufficiently alleges his removal from work release deprived him of a liberty interest.  Thus, his procedural due process claim turns on whether he has plausibly alleged he was afforded insufficient process.

a.      Supervisor Mulligan

Plaintiff has pleaded facts supporting a reasonable inference that Supervisor Mulligan was not a neutral hearing officer and thus deprived plaintiff of a liberty interest without sufficient process.  According to plaintiff, Supervisor Mulligan, who led plaintiff's disciplinary hearing, told plaintiff "he would be denied privileges if he contested the ticket, and that the odds of winning an appeal on the Tier III ticket were slim to none."  (Am. Compl. ¶¶ 132, 133).  Drawing all reasonable inferences in plaintiff's favor, cautioning plaintiff against contesting the ticket implies this statement was made prior to evidentiary proceedings regarding the ticket.

"An impartial hearing officer is one who, inter alia, does not prejudge evidence and who cannot say how he would assess the evidence he has not yet seen."  Brooks v. Prack, 77 F. Supp. 3d 301, 317 (W.D.N.Y. 2014) (quoting Patterson v. Coughlin, 905 F.2d 564, 569–70 (2d Cir. 1990)) (collecting cases).  Thus, the allegation that Supervisor Mulligan threatened plaintiff would lose privileges by defending against the charges is arguably sufficient, at this early stage, to plead plaintiff was denied a neutral hearing body as required by due process.

Accordingly, plaintiff's procedural due process claim against Supervisor Mulligan may proceed.

b.      CCCA Glover

Plaintiff has also pleaded facts supporting a reasonable inference that CCCA Glover participated in denying him due process.

Plaintiff alleges CCCA Glover threatened that plaintiff "would never go home if he did not plead guilty" to the drug charges.  (Am. Compl. ¶ 132).  But "verbal harassment, without more, is not actionable under § 1983" in the prison setting.  See Williams v. Dubray, 557 F. App'x 84, 86 (2d Cir. 2014) (summary order).

Here, however, plaintiff also alleges CCCA Glover wrote the inmate misbehavior report that falsely stated plaintiff had used drugs and denied plaintiff's request to retake the urine test. Although a prison inmate generally has "no constitutionally guaranteed" freedom from being falsely accused in a misbehavior report, there are "two exceptions to this rule: when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right."  Willey v. Kirkpatrick, 801 F.3d 51, 63 (2d Cir. 2015).

Plaintiff alleges that as a result of the inmate misbehavior report, he was adjudged guilty on drug use charges and disciplined by a hearing officer who prejudged his guilt.  Plaintiff has therefore pleaded sufficient facts to infer he was deprived a liberty interest without due process because of the false misbehavior report written by CCCA Glover.

Accordingly, plaintiff's procedural due process claim against CCCA Glover may proceed.

c.      Officer Berry, Officer Sioco, and Officer Hilton

Plaintiff's allegations against Officer Berry, Officer Sioco, and Officer Hilton are insufficient to state a procedural due process claim against them.

21

Other than conclusory group pleading allegations (see Am. Compl. ¶¶ 145, 148), plaintiff alleges Officer Berry, Officer Sioco, and Officer Hilton denied him proper procedure after his disciplinary hearing, by denying his requests for a second drug test and requests for his original urine sample to be sent for a confirmatory test.  (Am. Compl. ¶ 138).  However, this alleged post-hearing and post-discipline conduct is irrelevant to whether plaintiff was provided procedural due process in his disciplinary proceedings.

Accordingly, plaintiff's procedural due process claim against Officer Berry, Officer Sioco, and Officer Hilton must be dismissed.

        d.      <u>Violations of State Regulations and DOCCS Procedures</u>

Plaintiff claims the State Defendants denied him procedural due process by violating various New York state regulations or DOCCS procedures, specifically:  (i) his initial drug test was not submitted for a confirmatory test; (ii) his disciplinary hearing occurred sixteen days (instead of fourteen days) after he was issued the inmate misbehavior report;  (iii) he was disciplined through a disciplinary hearing and not by the temporary release committee; and (iv) a lieutenant was not present at plaintiff's hearing.  However, "allegations that the defendants violated state regulations during [plaintiff's] disciplinary hearing do not give rise to a § 1983 due process claim."  <u>Austin v. Fischer</u>, 453 F. App'x 80, 83 (2d Cir. 2011) (summary order); <u>see also</u> <u>Blouin ex rel. Est. of Pouliot v. Spitzer</u>, 356 F.3d 348, 363 (2d Cir. 2004) ("State procedures designed to protect substantive liberty interests entitled to protection under the federal constitution do not themselves give rise to additional substantive liberty interests.").

Accordingly, plaintiff's procedural due process claim arising from these alleged violations must be dismissed.

e.      Disciplinary Sanctions Imposed Before Hearing

To the extent plaintiff claims his removal from work release and denial of privileges after

the positive test, but prior to a hearing, violated procedural due process, his claim must be

dismissed because plaintiff does not allege any of the State Defendants effected his preliminary

removal.  Instead, plaintiff claims an unnamed "Fishkill employee" informed plaintiff "there was

a hold on his name," and the next day "a Correction Officer informed plaintiff he was removed

from the Work Release program."  (Am. Compl. ¶ 112).  These allegations do not plausibly

show the State Defendants' direct and personal involvement in the alleged constitutional

deprivation.  See Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d at 135.

C.      Substantive Due Process Claim

The State Defendants argue plaintiff's substantive due process claim against them for

prolonged incarceration must be dismissed because plaintiff fails to allege these defendants had

authority to release plaintiff from incarceration.

The Court agrees the claim must be dismissed, but because plaintiff fails to allege the

State Defendants were personally involved in the alleged violation.

1.      Applicable Law

"Substantive due process rights safeguard persons against the government's exercise of

power without any reasonable justification in the service of a legitimate governmental

objective."  Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir.), cert. denied, 142 S. Ct. 109

(2021).  To plead a substantive due process claim, the plaintiff must first "identify the

constitutional right at stake."  Id.  Second, "the plaintiff must demonstrate that the state action

was so egregious, so outrageous, that it may fairly be said to shock the contemporary

conscience." Id. (quoting Southerland v. City of New York, 680 F.3d 127, 151–52 (2d Cir. 2012)).

An incarcerated person has a liberty interest "in being released upon the expiration of his maximum term of imprisonment." Calhoun v. N.Y. State Div. of Parole Officers, 999 F.2d 647, 653 (2d Cir. 1993). "Because New York's conditional release scheme is mandatory," once an incarcerated person is entitled to an earlier release date, the "conditional release date became the operative date on which his maximum term of imprisonment expire[s]." Hurd v. Fredenburgh, 984 F.3d at 1085, 1088. Thus, "[i]nmates eligible for mandatory conditional release . . . . are entitled to substantive due process protection against egregious and arbitrary government interference" with their release on the conditional release date. Id. at 1088.

2.    Application

Here, plaintiff alleges he had a conditional release date of March 12, 2020, but that he was not released until March 26, 2020. Drawing all reasonable inferences in plaintiff's favor, plaintiff has alleged he was eligible for mandatory conditional release, and therefore had a liberty interest in being released on March 12, 2020. However, plaintiff does not identify the individual(s) responsible for his prolonged incarceration or allege any State Defendant was personally involved in detaining him. (See Am. Compl. ¶ 142 (alleging plaintiff "was summarily released from Fishkill" and that "[u]pon release, no DOCCS personnel, including, but not limited to [all the State Defendants] or any Fishkill Officer, employee or agent, ever provided Plaintiff with an explanation as to why Fishkill . . . suddenly released Plaintiff")). Plaintiff therefore fails to plead the personal involvement required to state a substantive due process claim under Section 1983.

Accordingly, plaintiff's substantive due process claim must be dismissed.

D.      Eighth Amendment Claims

Plaintiff appears to assert two Eighth Amendment claims against the State Defendants:

(1) a conditions-of-confinement claim based upon his placement in the general prison population

and (2) a false imprisonment claim, which the Court construes as a prolonged confinement claim

based upon deliberate indifference.

The State Defendants argue plaintiff fails to state an Eighth Amendment claim on either

ground because he has not alleged a sufficiently serious deprivation and has failed to plead the

requisite mens rea or personal involvement of any State Defendants.

The Court agrees, except with respect to the prolonged confinement claim against CCCA

Glover and Supervisor Mulligan.

1.      Legal Standard

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S.

Const. amend. VIII.  Courts have construed the Eighth Amendment to protect inmates' rights to

"conditions of confinement" that are "at least humane," Gaston v. Coughlin, 249 F.3d 156, 164

(2d Cir. 2001), and against "incarceration beyond a mandatory release date." Hurd v.

Fredenburgh, 984 F.3d at 1085.  To state a claim for a violation of either of these rights, a

prisoner must plausibly allege (i) an objective component, that the deprivation of rights was

objectively serious, and (ii) a subjective component, that the prison official acted with requisite

mens rea.  See, e.g., Gaston v. Coughlin, 249 F.3d at 164–65 (conditions of confinement); Hurd

v. Fredenburgh, 984 F.3d at 1084 (prolonged confinement).

To establish the objective component of a conditions-of-confinement claim, a plaintiff

"must show that the conditions, either alone or in combination, pose an unreasonable risk of

serious damage to his health."  Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013).  "Thus,

prison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." Id.

To establish the objective component of an Eighth Amendment claim based on prolonged incarceration, an "unauthorized detention of just one day past an inmate's mandatory release date" suffices. Hurd v. Fredenburgh, 984 F.3d at 1085. "There is no penological justification for incarceration beyond a mandatory release date because any deterrent and retributive purposes served by the inmate's time in jail were fulfilled as of that date." Id.

To establish the subjective component, an Eighth Amendment violation requires "more than mere negligence. To constitute deliberate indifference, the prison official must know of, and disregard, an excessive risk to inmate health or safety." Walker v. Schult, 717 F.3d at 125. "Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient." Id. "Under this standard, prison officials can be found deliberately indifferent to their own clerical errors on the basis of their refusals to investigate well-founded complaints regarding these errors." Hurd v. Fredenburgh, 984 F.3d. at 1084–85.

### 2. Conditions of Confinement

To support his claim that being housed in the general prison population amounted to cruel and unusual punishment, plaintiff alleges during the two months he spent there, a man was stabbed while sleeping, multiple fights broke out, plaintiff's cell mate had not seen sunlight in thirty-three years, and inmates in his housing area discussed "who was getting stabbed that night." (Am. Compl. ¶ 123). He alleges his depression, anxiety, and schizophrenia were

exacerbated by these conditions, which caused him migraines, trouble sleeping, and other physical and emotional ailments.

The Court is sympathetic to the fears plaintiff endured.  However, "[t]he Constitution does not . . . guarantee prisoners freedom from any and all sorts of unsavory environs.  To the extent that conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  Jones v. Goord, 435 F. Supp. 2d 221, 234 (S.D.N.Y. 2006) (denying injunctive relief to plaintiff who argued double-celling violated the Eighth Amendment because "inmate assaults are frequent, and can lead to serious injuries").  Indeed, the reality of being incarcerated is that "prisons house violent offenders, and confrontations between inmates are, to some extent, inevitable. Such incidents, standing alone, do not necessarily rise to the level of cruel and unusual punishment."  Id. at 238.

Here, plaintiff alleges fights broke out and another inmate was stabbed, but does not allege he was physically harmed or threatened by the other prisoners.  "While an actual physical attack is not required to demonstrate a substantial risk of serious harm, mere fear of an assault is insufficient to state a claim for an Eighth Amendment violation, so a pleading which merely asserts an unsubstantiated fear of harm fails to plead a successful risk of serious harm."  Petitpas v. Griffin, 2020 WL 6826723, at *6 (D. Conn. Nov. 21, 2020); see also Hudson v. Grenier, 2000 WL 1838324, at *6–7 (S.D.N.Y. Dec. 13, 2000) (plaintiff's allegation that his placement in the prison population could lead to injury was insufficiently serious to state an Eighth Amendment claim).  Accordingly, plaintiff's allegations that he "lived in fear of assault from [his] cellmates is not an objectively serious enough injury to support a claim for damages."  Bolton v. Goord, 992 F. Supp. 604, 627 (S.D.N.Y. 1998).

Even if plaintiff had alleged a sufficiently serious injury, he has not alleged facts showing any State Defendant knew of, and disregarded, the risks he faced.  That is, plaintiff does not allege he interacted with any State Defendant during this time or that any State Defendant was aware of the alleged conditions in the general population.[9]

Accordingly, plaintiff's Eighth Amendment claim based on his placement in the general prison population must be dismissed.

        3.    <u>Prolonged Confinement</u>

Drawing all reasonable inferences in plaintiff's favor, plaintiff has alleged he was eligible for mandatory conditional release and was incarcerated for fourteen days beyond his mandatory release date.  Plaintiff's allegations thus satisfy the first prong of an Eighth Amendment prolonged confinement claim.  <u>Hurd v. Fredenburgh</u>, 984 F.3d 1075 at 1085.

Regarding the second prong, plaintiff sufficiently pleads deliberate indifference on the part of CCCA Glover and Supervisor Mulligan.

Plaintiff alleges CCCA Glover falsely stated in a misbehavior report that plaintiff told CCCA Glover that naproxen use caused plaintiff's positive drug test (even though medical staff informed CCCA Glover that naproxen does not contain opiates), and that CCCA Glover threatened plaintiff would "never go home" unless plaintiff pleaded guilty to the misbehavior report.  (Am. Compl. ¶ 132).  Considering these allegations together, the Court can reasonably infer CCCA Glover knowingly made false statements in a report and then pressured plaintiff to

---

[9]      To the extent plaintiff asserts an Eighth Amendment failure-to-protect claim based on his transfer to the general prison population, his claim would be subject to the same legal standard and dismissed on the same grounds.  <u>Cruz v. Hillman</u>, 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002) (analyzing failure-to-protect and conditions-of-confinement claims together under the same analysis, and dismissing both claims for failure to plead a "sufficiently serious" injury when plaintiff "repeatedly allege[d] that his life was in danger" and that he suffered "much mental anguish and a great deal of suffering from worry and grief").

plead guilty at the resulting disciplinary proceedings.  This is sufficient to allege CCCA Glover consciously disregarded a risk of potential harm to plaintiff.  See Delee v. Hannigan, 729 F. App'x 25, 30 (2d Cir. 2018) (summary order) (noting Eighth Amendment mens rea "may be inferred from statements made by" a government official).

Plaintiff alleges Supervisor Mulligan "did not listen to Plaintiff's challenges to his faulty drug test" during his disciplinary hearing (Am. Compl. ¶ 179) and adjudged him guilty without the confirmatory test required under the Amended DOCCS Directive.  (See Amended DOCCS Directive at ECF 2 ("[N]o incarcerated individual may be disciplined . . . for a positive drug test before a positive confirmatory test has been received.")).  Thus, plaintiff's allegations support a reasonable inference that Supervisor Mulligan was "deliberately indifferent to [her] own clerical errors on the basis of . . . refus[ing] to investigate [plaintiff's] well-founded complaints" that he was entitled to a confirmatory test.  Hurd v. Fredenburgh, 984 F.3d at 1085–86.

However, as with his substantive due process claim, plaintiff has failed plausibly to plead Officer Berry, Officer Sioco, and Officer Hilton were personally involved in plaintiff's prolonged confinement for purposes of his Eighth Amendment claim.

Accordingly, plaintiff's Eighth Amendment claim for prolonged confinement against CCCA Glover and Supervisor Mulligan may proceed, but his Eighth Amendment claim for prolonged confinement against Officer Berry, Officer Sioco, and Officer Hilton must be dismissed.

E.      Section 1983 Fabrication of Evidence Claim

Plaintiff asserts a separate claim for fabrication of evidence pursuant to Section 1983 against the State Defendants.  However, the facts supporting this claim, and the applicable legal standard, are the same as his Fourteenth Amendment procedural due process claim.  Plaintiff's

claim is therefore duplicative of his procedural due process claim.  See Hickey v. City of New York, 2004 WL 2724079, at *6 n.3 (S.D.N.Y. Nov. 29, 2004) (dismissing false imprisonment claim under Section 1983 as identical to false arrest claim under Section 1983), aff'd, 174 F. App'x 893 (2d Cir. 2006).

Accordingly, plaintiff's separate Section 1983 claim premised on fabrication of evidence must be dismissed.

F.     State Law False Imprisonment Claim

The State Defendants argue plaintiff's state law false imprisonment claim against them is barred under New York Corrections Law § 24.

The Court agrees.

"Section 24 provides immunity for DOCCS employees from lawsuits based on acts or omissions within the course of their employment, and requires that such actions be brought in the New York Court of Claims as a claim against the state."  Parris v. N.Y. State Dep't of Corr. Servs., 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013).  "Section 24 is not a bar to claims against corrections officers and employees under § 1983.  However, it does provide immunity for claims under state laws."  Id.

Therefore, plaintiff's state law claim for false imprisonment against the State Defendants must be dismissed.[10]

IV.   Qualified Immunity

The State Defendants argue they are protected by qualified immunity because plaintiff does not plausibly allege his constitutional rights were violated.

---

[10]     Plaintiff, in his opposition, withdrew his negligence claim against the State Defendants, acknowledging the effect of Section 24.  (Doc. #85 at 15).

The Court disagrees with respect to Supervisor Mulligan and CCCA Glover. With respect to the other State Defendants, because plaintiff's claims against them must be dismissed for failure to state a claim, the Court need not consider whether qualified immunity applies.

A.    Applicable Law

Qualified immunity shields government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996). "Defendants bear the burden of establishing qualified immunity." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

"[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion." Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order). However, "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if the facts supporting the defense appear on the face of the complaint." Id.

B.    Application

As explained above, plaintiff plausibly alleges that CCCA Glover and Supervisor Mulligan violated his procedural due process rights under the Fourteenth Amendment and his rights under the Eighth Amendment. In addition, the Court cannot conclude, from the face of the complaint, that these defendants had an objectively reasonable belief that their actions did not violate plaintiff's constitutional rights.

Accordingly, at this early stage, plaintiff's claims against CCCA Glover and Supervisor Mulligan cannot be dismissed on qualified immunity grounds.

V.      Injunctive Relief

The Court lacks jurisdiction over plaintiff's claim for injunctive relief, which has been mooted by his release from prison and cessation of his alleged injuries.  See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.").

**CONCLUSION**

The Microgenics Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's negligence claim against the Microgenics Defendants may proceed.  All other claims against the Microgenics Defendants are dismissed.

The State Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's Fourteenth Amendment procedural due process claim and his Eighth Amendment claim against Supervisor Mulligan and CCCA Glover based on his incarceration beyond his conditional release date may proceed.  All other claims against the State Defendants are dismissed.

The Clerk is instructed to terminate Correction Officer Pamela Berry, Correction Officer Francis Sioco, Correction Officer Aaron Hernandez, Correction Officer Nicole Hilton, Anna Icarri, Ana Rubio, and Correction Officer Yuan Wu as defendants in this case.

The remaining defendants shall file answers to the amended complaint by February 23, 2023.

The Clerk is instructed to terminate the pending motions (Docs. ##58, 59, 82).

Dated: February 9, 2023
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge