```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
GLADSTONE TAYLOR,                                             :
                             Plaintiff,                       :
v.                                                            :
                                                              :    OPINION AND ORDER
DAMON GLOVER, Community Correctional                          :
Center Assistant, in his individual capacity;                 :    21 CV 6452 (VB)
and EDUCATION SUPERVISOR RENEE                                :
MULLIGAN, in her individual capacity,                         :
                             Defendants.                      :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Gladstone Taylor brings this Section 1983 action against defendants Community Correctional Center Assistant Damon Glover and Education Supervisor Renee Mulligan, employees at Fishkill Correctional Facility in Beacon, New York ("Fishkill"). Plaintiff claims defendants violated his constitutional rights under the Eighth and Fourteenth Amendments when they punished him for purportedly failing a drug test, resulting in, among other things, his removal from a work release program, loss of privileges, and loss of good time allowance.

Now pending is defendants' motion for summary judgment. (Doc. #134). For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

The parties have submitted memoranda of law, supporting declarations with exhibits, and statements of undisputed material facts pursuant to Local Civil Rule 56.1. Together, they reflect the following background.

I.   Plaintiff's Incarceration and Good Time Allowance

Beginning in 2016, plaintiff was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). On November 13, 2019, a DOCCS Time

1

Allowance Committee (the "TAC") recommended plaintiff be awarded eight months and twenty days good time credit, the maximum award for which plaintiff was statutorily eligible. As a result, his conditional release date was March 12, 2020.

Plaintiff was incarcerated at Fishkill from June 2019 until his release in March 2020. While incarcerated at Fishkill, plaintiff participated in a temporary work release program, pursuant to which he spent two days a week at Fishkill and five days a week living with his family and working at a Wendy's restaurant. As a participant in the program, plaintiff was entitled to special privileges at Fishkill, including a designated housing unit. Random drug testing was a condition of participating in the temporary work release program.

II.   Drug Test and Misbehavior Report

On January 9, 2020, after returning to Fishkill from work release, plaintiff underwent a random drug test by urinalysis and tested positive for opiates. As a result, he was barred from leaving the facility.

On January 13, 2020, a DOCCS employee informed defendant Glover, who was responsible for overseeing participants in the temporary work release program, that plaintiff tested positive for opiates. Glover interviewed plaintiff regarding the test results. Plaintiff denied using opiates and insisted his test sample be sent to an outside laboratory for additional testing, but Glover informed him the sample had been thrown away. After the interview, Glover prepared a misbehavior report charging plaintiff with using drugs and violating temporary work release rules. The misbehavior report states plaintiff denied using any illegal drugs and instead told Glover he was "using Naproxen for pain and it has opiates in it." (Doc. #136-2). However, the report states that medical staff at Fishkill advised Glover that Naproxen does not contain opiates.

2

Subsequently, a supervising lieutenant reviewed the misbehavior report and issued a Tier III disciplinary ticket against plaintiff. As a result, a Tier III disciplinary hearing on the misbehavior report was scheduled for January 27, 2020, and plaintiff's good time allowance award was automatically stayed.

III.     Tier III Disciplinary Hearing

On January 29, 2020, after two one-day adjournments due to witness unavailability, defendant Mulligan conducted the Tier III disciplinary hearing. Plaintiff received prior notice of the hearing and had the opportunity to call and question witnesses. He requested three witnesses: Offender Rehabilitation Coordinator ("ORC") Rubio, ORC Icarri, and Correction Officer Hernandez. (Doc. #136-3). Only ORC Rubio testified.

Plaintiff pleaded not guilty to both charges in the misbehavior report. Although not reflected in the hearing transcript, plaintiff claims he tried to alert Mulligan that the "chain of procedure" with the urinalysis was not followed because his positive test sample was not tested a second time. (Doc. #136-1, Tr. at 157).[1] Moreover, plaintiff testified that Mulligan threatened him off-the-record at his disciplinary hearing, saying "if you plead not guilty, you're not going to make it home" and that plaintiff "can't beat the ticket." (Id., Tr. at 138). Mulligan disputes both that these statements were made and that she communicated with plaintiff off-the-record.

At the conclusion of the hearing, Mulligan found plaintiff guilty of both charges and imposed penalties of twenty-one days' loss of programming and thirty days' loss of commissary and package privileges. Plaintiff testified that Mulligan also revoked his visitation privileges and

---

[1]     Citations to "Tr. at __" refer to the page numbers at the bottom right of each transcript page.

3

placed him on cube confinement for a month, during which he was unable to move anywhere outside the area surrounding his bed and locker, use the bathroom, cook, or socialize without permission. Mulligan's findings did not reference the alleged deficiencies with the urinalysis.

On January 29, 2020, plaintiff appealed the disciplinary determination.

IV.     TRC Hearing and Removal from Temporary Work Release

On February 6, 2024, plaintiff appeared before the Temporary Release Committee (the "TRC") for a hearing on his continued participation in the temporary work release program. The TRC hearing was conducted by then-Senior ORC Patterson, ORC Gallo, and Glover. At the hearing, plaintiff denied using opiates and claimed his drug test was a false positive. Plaintiff also disputed that he had told Glover that Naproxen has opiates in it. Instead, plaintiff argued he told Glover he did not know if Naproxen contains opiates and that he had been told Naproxen is a narcotic. Glover denied inaccurately reporting plaintiff's statements and stated that medical staff informed him Naproxen actually decreases the excretion of opiates.

The TRC recommended plaintiff be removed from the temporary work release program; Glover did not participate in the TRC's vote or recommendation. On February 10, 2020, the designee of Fishkill's Superintendent approved the TRC's recommendation and removed plaintiff from the temporary work release program.

V.      TAC Reconsideration and Release

On March 19, 2020, the TAC reconsidered plaintiff's eligibility for his good time allowance award in light of the Tier III disciplinary proceeding. The TAC recommended reinstating plaintiff's full award of eight months and twenty days good time allowance. On March 23, 2020, the superintendent endorsed this recommendation and on March 24, 2020, the commissioner approved the recommendation. (Doc. #136-7). Plaintiff became immediately eligible for conditional release and, on March 26, 2020, he was released from Fishkill.

VI.      Appeal of Disciplinary Determination

On April 2, 2020, DOCCS granted plaintiff's appeal of his disciplinary determination and reversed and expunged the Tier III ticket, reasoning that the relevant DOCCS policy at the time required a second test to confirm plaintiff's test results. (Doc. #140 ¶ 18).

Plaintiff thereafter brought this action.

## DISCUSSION

I.      Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when it "might affect the outcome of the suit under governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex v. Catrett, 477 U.S. at 322-23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.

5

However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown ex rel. Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "The mere existence of a scintilla of evidence in support" of the non-moving party's position is likewise insufficient; "there must be evidence on which the jury could reasonably find for" the non-moving party. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes all facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004). The Court need consider only evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.   Legal Framework

    A.   Good Time Allowance

Under New York law, an inmate may be awarded a "time allowance" against his or her term of imprisonment, resulting in early release. N.Y. Correct. Law § 803(1)(a); N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7 §§ 261.3(a)-(d), 262.1. "Such allowances may be granted for good behavior and efficient and willing performance of duties assigned or progress and achievement in an assigned treatment program." N.Y. Correct. Law § 803(1)(a). Four months before the date of an inmate's earliest possible conditional release, the TAC reviews that inmate's file to determine how much, if any, good time allowance to recommend. 7 N.Y.C.R.R. § 261.3(a). The TAC makes its recommendation to the prison superintendent who, upon

endorsement, forwards the committee's recommendation and endorsement to the commissioner or the commissioner's designee to confirm or modify the amount of time to be granted, or to remand the matter to the TAC for reconsideration.  Id. at § 262.1(a)-(c).

Any award of good time allowance is "contingent on the inmate's continued good behavior."  7 N.Y.C.R.R. § 262.1(d).  The decision to hold a hearing on a misbehavior report automatically stays any good time award until a superintendent's hearing is conducted.  Id. § 263.2(a)(1).  If an inmate acts in disregard for statutory criteria, such as a "violation of institutional rules or failure to perform properly in the duties or program assigned," N.Y. Correct. Law § 803(1)(a), the superintendent may instruct the TAC "to conduct a hearing . . . to reconsider the amount of good time to be granted," 7 N.Y.C.R.R. § 263.2(b)(1).

### B. Temporary Work Release

Under New York regulations, an inmate may participate in a temporary work release program, which involves the inmate's release from incarceration for a limited time to work or gain on-the-job training.  However, "[a] superintendent may at any time revoke an inmate's participation in the temporary release program, and upon the recommendation of the temporary release committee, the commissioner, or the chairman of the board of parole or his designee, shall revoke an inmate's privilege to participate in the temporary release program."  7 N.Y.C.R.R § 1904.1(a).  Violations of departmental rules indicate an inmate's "unsuitability for continued participation" in the program.  Id. § 1904.1(c).

All Tier III disciplinary tickets must be referred to the TRC.  7 N.Y.C.R.R. § 1904.2(f). "Only the [TRC] can remove an inmate from the program.  Regardless of the outcome of any disciplinary hearing, the [TRC] retains the right to review an inmate's behavior and remove the inmate from the program."  Id.  However, the TRC "may not use a misbehavior report as a basis

for recommending that an inmate be removed from the temporary release program when the violation has not been sustained." Id. § 1904.2(g).

III.   Eighth Amendment Claim

Defendants argue they are entitled to summary judgment on plaintiff's Eighth Amendment claim because plaintiff was not detained past his mandatory release date and thus suffered no Eighth Amendment violation.  Defendants further contend that, even if plaintiff was detained past his mandatory release date, neither defendant was personally involved in such a violation.

The Court agrees in part and disagrees in part.

A.   Legal Standard

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  Courts have construed the Eighth Amendment to protect against "incarceration beyond a mandatory release date."  Hurd v. Fredenburgh, 984 F.3d 1075, 1085 (2d Cir. 2021).  To show a violation of this right, a prisoner must show:  (i) an objective component, that the deprivation of rights was sufficiently serious, and (ii) a subjective component, that the prison official acted with requisite mens rea.  Id. at 1084.

To establish the objective component, a plaintiff must demonstrate "a harm of a magnitude that violates a person's Eighth Amendment rights."  Calhoun v. N.Y.S. Div. of Parole Officers, 999 F.2d 647, 654 (2d Cir. 1993).  This includes "penalties that are grossly disproportionate to the offense, as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Hurd v. Fredenburgh, 984 F.3d at 1084.

To satisfy the subjective component, a prison official must act with at least "deliberate indifference" to a plaintiff's health or safety.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

8

This "element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that the harm will result.'" Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (quoting Farmer v. Brennan, 511 U.S. at 837). "The subjective element requires a state of mind that is the equivalent of criminal recklessness." Hathaway v. Coughlin, 99 F.3d at 553. This requisite state of mind "may be inferred from statements made by a corrections officer." Delee v. Hannigan, 729 F. App'x 25, 30 (2d Cir. 2018) (summary order); see also Crawford v. Cuomo, 796 F.3d 252, 259 (2d Cir. 2015).

However, not all inmates who are not released on their conditional release dates are entitled to damages under Section 1983. Hurd v. Fredenburgh, 984 F.3d at 1086. "If a period of prolonged detention results from discretionary decisions made in good faith, mistake, or processing or other administrative delays, as opposed to the deliberate indifference of prison officials, then there is no Eighth Amendment liability." Id.

Furthermore, to sustain a claim under Section 1983, a plaintiff must demonstrate a defendant's personal involvement in the deprivation of his or her constitutionally protected rights, i.e., that each defendant, "through [his or her] own individual actions, has violated the Constitution." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)).

    B.    Analysis

        1.    Objective Prong

Defendants argue plaintiff has not satisfied the objective prong of his Eighth Amendment claim because plaintiff "did not lose any good time as a result of the drug test discipline." (Doc. #135 at 11).

The Court disagrees.

The undisputed facts show plaintiff's conditional release date was originally March 12, 2020. However, the good time allowance award establishing this conditional release date was automatically stayed when the Tier III hearing was scheduled. When his good time allowance was reinstated by the TAC, plaintiff's conditional release date was March 24, 2020—twelve days later than the original conditional release date—and plaintiff was released on March 26, 2020—fourteen days after his original conditional release date.

Under New York law, a conditional release date is a "statutorily mandated release date, calculated by applying both [an inmate's] good behavior and his jail time, or time served awaiting trial." Hurd v. Fredenburgh, 984 F.3d at 1081 (citing Eiseman v. New York, 511 N.E.2d 1128 (N.Y. 1987)). And as the Second Circuit has made clear, the "unauthorized detention of just one day past an inmate's mandatory release date" satisfies the objective prong and is "a harm of constitutional magnitude," as there "is no penological justification for incarceration beyond a mandatory release date because any deterrent and retributive purposes served by the inmate's time in jail were fulfilled as of that date." Id. at 1085–86. Here, because of defendants' allegedly violative conduct, plaintiff was detained beyond his original conditional release date and statutorily mandated release date. Accordingly, plaintiff has satisfied the objective prong.

        2.     Subjective Prong

           a.     Glover

As to the subjective component, defendants argue Glover did not act with deliberate indifference and was not personally involved in plaintiff's prolonged confinement.

The Court agrees.

10

In accordance with DOCCS procedures, Glover interviewed plaintiff after plaintiff tested positive for opiates and issued a misbehavior report. See 7 N.Y.C.R.R. § 251-3.1. While Glover was likely aware that a misbehavior report arising from a positive drug test would result in a Tier III disciplinary hearing, there is no evidence that Glover acted with "criminal recklessness," or knew of or disregarded "an excessive risk to [plaintiff's] health or safety." Hathaway v. Coughlin, 99 F.3d at 553. Therefore, Glover did not act with deliberate indifference to plaintiff's prolonged confinement.

Moreover, Glover was not personally involved in plaintiff's prolonged confinement. The Second Circuit has held that the filing of a misbehavior report alone does not create personal involvement in a constitutional violation. See Williams v. Smith, 781 F.2d 319, 324 (2d Cir. 1986). Glover's involvement was limited to preparing and submitting the misbehavior report based on his interview of plaintiff and information from other officers. However, the decision to convene a hearing on the misbehavior report was made by the supervising lieutenant, not Glover. Moreover, while it is not clear who made the decision to hold a Tier III hearing, which triggered the automatic stay of plaintiff's good time allowance award, there is nothing in the record suggesting it was Glover. Because Glover was not personally involved in plaintiff's prolonged confinement, plaintiff fails to satisfy the subjective prong of his Eighth Amendment claim against Glover.

        b.    Mulligan

Defendants argue Mulligan cannot be held liable for plaintiff's prolonged confinement because she exercised no control over plaintiff's good time credit.

The Court disagrees.

To demonstrate deliberate indifference, a plaintiff must show "a causal connection between the official's response to the problem and the infliction of the unjustified detention." Hurd v. Fredenburgh, 984 F.3d at 1086. If a defendant cannot influence a plaintiff's prolonged confinement, then any alleged deliberate indifference is irrelevant. Id. Here, plaintiff's good time allowance award, which was stayed pending the disciplinary hearing, would have been automatically reinstated if Mulligan had found plaintiff not guilty at the disciplinary hearing. 7 N.Y.C.R.R § 263.2(a)(2). Accordingly, there is a clear causal connection between Mulligan's guilty disposition and plaintiff's prolonged confinement.

Moreover, drawing all inferences in plaintiff's favor, a reasonable jury could find that Mulligan acted with deliberate indifference towards plaintiff. Plaintiff claims he pointed Mulligan to DOCCS policies and procedures that required a second, confirmatory drug test in the event of a positive result. Indeed, DOCCS later relied on these policies when it granted plaintiff's appeal and expunged Mulligan's disciplinary decision. However, Mulligan did not address these policies when finding plaintiff guilty, although it is unclear whether those policies applied to the brand of drug test plaintiff took. Plaintiff also testified that Mulligan, speaking to him off-the-record, threatened that if plaintiff did not plead guilty, he would not be released and he would never be able to defeat the charges against him. Although Mulligan denies making any such comments, a reasonable jury could find that Mulligan, rather than acting in good faith or as a result of a mistake, acted with deliberate indifference by ignoring the relevant DOCCS policies and telling plaintiff he could not "beat" the disciplinary ticket.

Accordingly, granting summary judgment on plaintiff's Eighth Amendment claim as to Mulligan is improper.

12

IV.      Fourteenth Amendment Claim

Defendants argue no genuine issues of fact preclude summary judgment on plaintiff's Fourteenth Amendment procedural due process claim arising from plaintiff's removal from the temporary work release program, placement in cube confinement, and loss of commissary, package, and visitation privileges.

The Court agrees.

A.      Legal Standard

Due process principles require "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Chase Grp. All. LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010). To establish a violation of procedural due process under the Fourteenth Amendment, a plaintiff must show that (i) he possessed a liberty interest and (ii) as a result of insufficient process, the defendants deprived him of this interest. Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).

As to the existence of a liberty interest for an incarcerated person, "states may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Connor, 515 U.S. 472, 483–84 (1995). "But these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

To sustain a due process claim based on prison confinement, "both the conditions and duration must be considered since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." Sealey v. Giltner, 197 F.3d 578, 586 (2d Cir. 1999). Generally, the "atypical and significant hardship" standard is an issue of law. Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000). However, if

13

there are factual issues regarding the conditions or duration of confinement, the jury "must resolve those disputes and then apply the law of atypicality, as instructed by the Court." Id.

As to the second element of a procedural due process claim, if there is a prison disciplinary proceeding at issue, "the full panoply of rights due a defendant" in a criminal prosecution do not apply because a disciplinary proceeding in prison is not part of a criminal prosecution. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Instead, procedural due process afforded to a prisoner undergoing a disciplinary proceeding includes "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004).

Similarly, in the temporary work release context, due process requires:

> (1) written notice of the claimed basis for revocation; (2) disclosure of evidence against the inmate; (3) an opportunity to be heard in person and to present evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral hearing body; and (6) a written statement by the factfinder detailing the reasons for revocation and identifying "some evidence" in the record to support the findings.

Dicks v. Chow, 382 F. App'x 28, 30 (2d Cir. 2010) (summary order).

Finally, it is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013).

B.  Analysis

1.  Glover

Defendants argue Glover was not personally involved in any due process violations suffered by plaintiff.

The Court agrees.

14

Glover's involvement in the disciplinary process was limited to drafting and submitting the misbehavior report and substantiating the contents of the report at the TRC hearing. Even assuming Glover's report was false, "the filing of a false report does not, of itself, implicate the [officer] who filed it in constitutional violations which occur at a subsequent disciplinary hearing." Williams v. Smith, 781 F.2d at 324. Moreover, Glover did not participate in the vote to remove plaintiff from the temporary work release program. While plaintiff disputes this was the extent of Glover's involvement, plaintiff does not point to any evidence which gives rise to a question of fact regarding Glover's involvement.

Accordingly, the Court concludes Glover was not personally involved in any purported due process violations.

2. Mulligan

First, defendants argue Mulligan was not personally involved in plaintiff's removal from the temporary work release program.

The Court agrees.

"Prisoners on work release have a liberty interest in continued participation in such programs." Friedl v. City of New York, 210 F.3d 79, 84 (2d Cir. 2000). "Thus, prisoners are entitled to procedural due process before they are subjected to such a deprivation of liberty." Id. However, only the TRC had the authority to remove plaintiff from the work release program.

Mulligan was not present at the TRC hearing and had no authority over plaintiff's participation in the temporary work release program. To the extent plaintiff argues Mulligan's decision in the disciplinary context affected his participation in the program, the TRC had no obligation to follow Mulligan's findings. In fact, the TRC had the authority to remove plaintiff from the program regardless of the outcome of a disciplinary hearing. See 7 N.Y.C.R.R.

15

§1904.2(f). Accordingly, the Court finds Mulligan was not personally involved in plaintiff's removal from the program.

Second, to the extent plaintiff argues the imposition of cube confinement or loss of commissary, package, and visitation privileges for 30 days constitutes a cognizable due process injury, the Court disagrees.

"Restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection," and that "proof of conditions more onerous than usual" are required to sustain a claim. Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009). Furthermore, courts in the Second Circuit have consistently held cube confinement of thirty days or less "under ordinary conditions does not rise to a level sufficient to support a procedural due process claim." Waters v. Gallagher, 2017 WL 9511163, at *6 (N.D.N.Y Aug. 7, 2017), report and recommendation adopted in part, 2017 WL 3913282 (N.D.N.Y. Sept. 7, 2017); see also Williams v. Keane, 1997 WL 527677, at *6 (S.D.N.Y August 25, 1997) (collecting cases). Because plaintiff has failed to show he was exposed to atypical or significantly harsh conditions, his cube confinement does not implicate a liberty interest.

Moreover, courts in the Second Circuit have consistently held the loss of commissary, package, and visitation privileges does not implicate liberty interests. See Owens v. County of Orange, 2023 WL 6199736, at *3 (S.D.N.Y. Sept. 22, 2023) ("Even the deprivation of any right to visitation for significant periods has been held not to implicate a liberty interest"); Arriaga v. Otaiza, 2021 WL 5449849, at *7 (S.D.N.Y. Nov. 19, 2021) (holding deprivation of packages and commissary does "not represent the types of deprivations which could reasonably be viewed as imposing atypical and significant hardship on an inmate"). Plaintiff's loss of commissary,

package, and visitation privileges and the imposition of cube confinement thus do not implicate his liberty interests.

Accordingly, defendants are entitled to summary judgment on plaintiff's Fourteenth Amendment procedural due process claim.

## CONCLUSION

The motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Plaintiff's Section 1983 Eighth Amendment claim against Mulligan may proceed. All other claims are dismissed.

The Court will conduct a case management conference on **January 8, 2025, at 2:30 p.m.**, to be held at the White Plains courthouse, Courtroom 620, at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case.

The Clerk is instructed to terminate Damon Glover as a defendant in this case.

The Clerk is further instructed to terminate the motion. (Doc. #134).

Dated: December 11, 2024
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge