```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
GLADSTONE TAYLOR,                          :
                Plaintiff,                 :
                                           :
v.                                         :     OPINION AND ORDER
                                           :
                                           :     21 CV 6452 (VB)
EDUCATION SUPERVISOR RENEE                 :
MULLIGAN, in her individual capacity,      :
                Defendant.                 :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Gladstone Taylor brings this Section 1983 action against defendant Renee Mulligan, who is employed as an Education Supervisor at Fishkill Correctional Facility in Beacon, New York ("Fishkill"). Plaintiff claims Mulligan violated his constitutional rights under the Eighth Amendment when she punished him for purportedly failing a drug test, resulting in loss of good time credit and his continued incarceration for fourteen days beyond his original conditional release date. Now pending are defendant's motions in limine and plaintiff's motion in limine. (Docs. ##165; 166).

For the reasons set forth below, Mulligan's first motion in limine—namely, that she is entitled to qualified immunity as a matter of law—is GRANTED.

The parties' remaining motions in limine are DENIED AS MOOT.

## BACKGROUND

The parties have submitted motions in limine, as well as a joint pre-trial order. (Docs. #164–66). Together with the prior case history, they reflect the following background.

I.      Plaintiff's Incarceration & Proceedings at Fishkill

Plaintiff was incarcerated at Fishkill starting in June 2019. On November 13, 2019, the Time Allowance Committee (the "TAC") recommended plaintiff be awarded eight months and

1

twenty days good time credit, the maximum award for which plaintiff was statutorily eligible. As a result, plaintiff's conditional release date was March 12, 2020, several months prior to the expiration of his maximum sentence in December 2020.

While at Fishkill, plaintiff participated in a temporary work release program, which permitted him to work and live outside of Fishkill for five days a week. As a condition of the work release program, plaintiff was required to submit to random drug testing.

On January 9, 2020, plaintiff underwent a random drug test and tested positive for opiates. Plaintiff denied using opiates and requested his sample be sent to an outside laboratory for additional testing. Despite plaintiff's insistence he had done nothing wrong, he was barred from leaving the facility, charged with a misbehavior report, and issued a disciplinary ticket. A disciplinary hearing was subsequently scheduled, automatically staying plaintiff's good time credit award.

The disciplinary hearing was held on January 29, 2020, and presided over by defendant Mulligan. Plaintiff pleaded not guilty to the charges in the misbehavior report. Nevertheless, Mulligan found plaintiff guilty of both charges and imposed penalties. Plaintiff appealed the disciplinary determination that same day.

On March 19, 2020, the TAC reconsidered plaintiff's eligibility for his good time credit award and recommended reinstating plaintiff's full good time credit award. On March 23, 2020, the superintendent endorsed this recommendation and on March 24, 2020, it was approved. (Doc. #136–7). Plaintiff became immediately eligible for conditional release, and, on March 26, 2020, fourteen days after his initial conditional release date, he was released from Fishkill to post-release supervision. On April 2, 2020, plaintiff's appeal of his disciplinary determination was granted and his disciplinary ticket expunged. (Doc. #140 ¶ 18).

II.     Procedural History

On July 29, 2021, plaintiff brought this action against Mulligan and other defendants. (Doc. #1).  Plaintiff filed an amended complaint on February 28, 2022.  (Doc. #39).  On June 17, 2022, Mulligan, along with several state defendants moved to dismiss the amended complaint. (Doc. #82).  Although the Court granted in part and denied in part the state defendants' motion to dismiss, plaintiff's Fourteenth Amendment procedural due process claim and Eighth Amendment claim against Mulligan and then-defendant Damon Glover survived.  (Doc. #91).  Mulligan and Glover answered the complaint on March 2, 2023.  (Doc. #97).

On March 15, 2024, Mulligan and Glover moved for summary judgment.  (Doc. #134). Although Mulligan raised a qualified immunity defense in her answer to plaintiff's first amended complaint (Doc. #97 at 22) and in her motion to dismiss the first amended complaint (Doc. #83 at 22–24), she did not raise the defense in her motion for summary judgment.  On December 11, 2024, the Court dismissed all claims except for plaintiff's Eighth Amendment claim against Mulligan.  (Doc. #152).

On April 4, 2025, defense counsel requested either a premotion conference or leave to file a motion regarding Mulligan's entitlement to qualified immunity with respect to plaintiff's remaining claim.  (Doc. #160).  Plaintiff's counsel opposed the request.  (Doc. #162).  At a conference held on April 22, 2025, the Court set pre-trial deadlines, directed counsel to brief the qualified immunity issue in their motions in limine, and set a trial date for January 12, 2026. (Doc. #163).

On August 11, 2025, Mulligan filed her motions in limine, the first of which is that the need for trial is obviated because she is entitled to qualified immunity.  (Doc. #165).  In the event trial proceeds, Mulligan argues plaintiff should be precluded from (i) offering evidence regarding

3

claims that have already been dismissed, (ii) referring to defense counsel as state attorneys or suggesting Mulligan will be indemnified by the state, and (iii) suggesting a specific damages calculation to the jury.  In addition, Mulligan argues defense counsel should be permitted to cross-examine plaintiff regarding his past criminal convictions and incarcerations.  On September 2, 2025, plaintiff opposed Mulligan's motions (Doc. #168), and on September 9, Mulligan filed a reply in support.  (Doc. #169).

In addition, on August 18, 2025, plaintiff filed his motion in limine, in which he argues Mulligan should not be permitted to cross-examine him about prior bad acts, including his previous criminal record.  (Doc. #166).  On September 2, 2025, Mulligan opposed plaintiff's motion (Doc. #167), and on September 9, 2025, plaintiff filed a reply.  (Doc. #170).

**LEGAL STANDARD**

A trial court's "inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008).[1] "Generally, the purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH, 104 F.Supp.3d 348, 349–50 (S.D.N.Y. 2015).  However, an in limine motion may also be an appropriate vehicle for resolving "purely legal . . . non-record dependent legal issues," Summit Properties Intern., LLC v. Ladies Professional Golf Ass'n, 2010 WL 4983179, at *2 (S.D.N.Y. Dec. 6, 2010), in particular, when "it falls into the small set of exceptional instances" in which a pre-trial ruling "would promote the efficient and effective resolution of [an] issue before" the Court.  Paone v.

---

[1]  Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

Puglisi, 2013 WL245745, at *2 (S.D.N.Y. Jan. 23, 2013).  Thus, "while dismissing claims is not the prototypical purpose of a motion in limine, such motions have sometimes been addressed on the merits and have sometimes been construed as or converted into motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or motions for summary judgment under Rule 56."  Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH, 104 F.Supp.3d at 350.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009); Fabrikant v. French, 691 F.3d 193, 212 (2d Cir. 2012).  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Id.  "[T]he ultimate legal determination of whether qualified immunity attaches . . . is a question of law better left for the court to decide."  Stephenson v. Doe, 332 F.3d 68, 81 (2d Cir. 2003).

"The Eighth Amendment protects prisoners from cruel and unusual punishment from prison officials."  Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).  A plaintiff asserting an Eighth Amendment claim must first "show that the alleged deprivation is objectively sufficiently serious to constitute cruel and unusual punishment, and second, a plaintiff must show that the charged official acted with a sufficiently culpable state of mind."  Matzell v. Annucci, 64 F.4th 425, 435 (2d Cir. 2023).  This requires a plaintiff to plead "a harm of magnitude" as well as a pleading the prison official had a "state of mind that is the equivalent of criminal recklessness" or deliberate indifference.  Id.

5

Before January 2021, the Second Circuit had "never held that an inmate suffers a constitutional harm under the Eighth Amendment when they are detained beyond a statutorily mandated release date, even if that mandatory release date precedes the expiration of the maximum term of their sentence."  Hurd v. Fredenburgh, 984 F.3d 1075, 1092 (2d Cir. 2021).

**DISCUSSION**

Mulligan argues the need for trial is obviated because she is entitled to qualified immunity on plaintiff's Eighth Amendment claim.  (Doc. #165 at 3).  Whether Mulligan is entitled to qualified immunity as a matter of law is a question the Court can decide.  Stephenson v. Doe, 332 F.3d 68, 81 (2d Cir. 2003).  Although the best time to present this issue would have been in a motion for summary judgment, the Court can reach the merits of defendant's in limine motion because it is a "purely legal" issue.  Summit Properties Intern., LLC v. Ladies Professional Golf Ass'n, 2010 WL 4983179, at *2; Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH, 104 F.Supp.3d at 350.  Moreover, because this is plaintiff's only remaining claim and resolution of the issue could obviate the need for trial, judicial economy compels the Court to address it now.

Plaintiff alleges Mulligan violated his Eighth Amendment rights because his conditional release was delayed by fourteen days.  However, Mulligan contends "[t]here can be no serious dispute that [plaintiff's] Eighth Amendment right . . . was not clearly established at the time of the events underlying this action."  (Doc. #165 at 3).  In support, Mulligan relies on Hurd v. Fredenburgh, the 2021 Second Circuit case which held for the first time "that an inmate suffers a constitutional harm under the Eighth Amendment when they are detained beyond a statutorily mandated release date, even if that mandatory release date precedes the expiration of the maximum term of their sentence."  984 F.3d at 1092.

In Hurd, the Second Circuit determined the defendant was entitled to qualified immunity because, although "[i]t was clearly established that New York State could not detain [the plaintiff] past the expiration of his maximum sentence, . . . it was not clearly established that once [the plaintiff's] conditional release date was approved, continued detention beyond that date qualifies as a constitutional harm for Eighth Amendment purposes." Hurd v. Fredenburgh, 984 F.3d at 1092. Mulligan argues Hurd "compels the conclusion that the Eighth Amendment right plaintiff alleges [she] violated in this action was not clearly established in 2020 at the time of her alleged actions." (Doc. #165 at 4).

The Court agrees.

Plaintiff's arguments to the contrary are unavailing. In brief, plaintiff reiterates the standard for an Eighth Amendment claim and then realleges facts giving rise to his claim against Mulligan. (Doc. #168 at 4–5). Plaintiff's sole attempt to distinguish Hurd is unpersuasive. Specifically, he contends Mulligan "ignore[s] the critical points" discussed in Hurd, but he never articulates the purported "critical points." Instead, plaintiff cites Hurd for the contentions that there "is no penological justification for incarceration beyond a mandatory release date because any deterrent and retributive purposes served by the inmate's time in jail were fulfilled as of that date," and for the sanctity of "freedom of choice and movement" in our Constitution. (Doc. #168 at 6). Neither point addresses or is relevant to Mulligan's qualified immunity defense.

While granting qualified immunity to the defendant, the Hurd Court took pains to explain that "in the qualified immunity analysis . . . rights should not be defined at a high level of generality and instead must be particularized to the facts of the case." Hurd v. Fredenburgh, 984 F.3d at 1090. Thus, although appellant there relied on cases which "clearly established that imprisonment beyond one's term constitute[d] punishment within the meaning of the eighth

7

amendment," those cases did not "confirm that prolonging an inmate's detention past their conditional release date might violate the inmate's rights under the Eighth Amendment." Id. (emphasis added).

Plaintiff's Eighth Amendment right to not be confined past his conditional release date, but within his term of maximum confinement, was not clearly established until the Second Circuit's 2021 decision in Hurd. Because the law was not clearly established prior to 2021, Mulligan is entitled to qualified immunity for actions taken in 2020, which allegedly resulted in plaintiff's imprisonment for fourteen days beyond his conditional release date.

Thus, plaintiff's Eighth Amendment claim against Mulligan must be dismissed. As a result, plaintiff has no remaining claims and there is no need for trial. For the same reason, the remainder of the parties' motions in limine are moot.

## CONCLUSION

Defendant Mulligan's first motion in limine—namely, that she is entitled to qualified immunity as a matter of law—is GRANTED.

The parties' remaining motions in limine are DENIED AS MOOT.

The Clerk is instructed to terminate both motions (Docs. ##165; 166) and close this case.

Dated: December 9, 2025
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge